UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES DICKERSON,<br>   *Defendant*. | No. 3:10-cr-227 (JAM) |

**ORDER GRANTING MOTION FOR RELEASE**

James Dickerson is a prisoner of the Federal Bureau of Prisons ("BOP") where he is serving a term of imprisonment for violation of his conditions of federal supervised release. In light of his particular vulnerability to the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his remaining term of imprisonment to a sentence of time-served. I will grant the motion for a reduction of sentence to a sentence of time served as of Monday, August 24, 2020, with a one-year term of supervised release to follow subject to the same conditions as previously imposed in addition to a condition that he shall be subject to home detention with electronic monitoring until January 8, 2021.

### BACKGROUND

On February 3, 2020, I sentenced Dickerson principally to a term of 12 months and one day of imprisonment following his admission to violations of the conditions of his supervised release. Dickerson is presently incarcerated on holdover status at FCI Fairton. Although he was designated to a different facility, it is not expected in light of limitations on prisoner transport during the COVID-19 pandemic that he will be transferred to the designated facility prior to the expiration of his prison term on January 8, 2021.

On June 12, 2020, Dickerson filed a *pro se* motion for "compassionate release" reduction in sentence in light of the COVID-19 pandemic. Doc. #2352. I denied the motion on the ground Dickerson had yet to exhaust administrative remedies. Doc. #2357.

On July 17, 2020, Dickerson renewed his *pro se* motion, now contending that he had sought relief from his prison warden and that more than 30 days had elapsed since he had sought this relief. Doc. #2363. On July 24, 2020, counsel for Dickerson filed a supplemental motion for sentence reduction. Doc. #2367. Dickerson alleges that he is particularly susceptible to COVID-19 because he has a body mass index (BMI) of 39.7 and because he has other health risk factors including tobacco use and periodontitis. *Id.* at 22-23.

On July 31, 2020, I held a hearing on Dickerson's motion and held the motion under advisement pending further verification that he had exhausted his administrative remedies as required and pending more inquiry and information about his proposed release plan. Doc. #2370. Dickerson has since supplemented the record with a copy of the unanswered request he states that he made to the prison warden more than 30 days ago, Doc. #2371, and the U.S. Probation Office has confirmed that Dickerson has a secure place to live with a private room at the house of a family member at 72 Brewster Street in New Haven, Connecticut.

## DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to Dickerson in this case.

### *Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. 2020).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[1] The statute does not further define this term but instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.* Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). The commentary provides, for example, that "extraordinary and compelling reasons" exist if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

---

[1] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of defendants who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

3

*Ibid.* cmt. n.1(A). The commentary further provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to conform with the First Step Act's authorization for defendants to bring their own motions. Therefore, to the extent that the Guidelines commentary purports to vest exclusive authority with the BOP to make a determination of "Other Reasons," this requirement is no longer applicable, and courts have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See United States v. Marks*, 2020 WL 1908911, at *5-7 (W.D.N.Y. 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. 2020) (collecting cases); *United States v. Pinto-Thomaz*, --- F. Supp. 3d ----, 2020 WL 1845875, at *2 (S.D.N.Y. 2020) (same); *Almontes*, 2020 WL 1812713, at *3 (same).

Beyond a court's determination whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a).[2] In addition, a court must determine that "[t]he defendant

---

[2] Where as here a defendant is serving a sentence for a violation of supervised release, a court may not consider the retributive purposes of sentencing but is limited to considering the more limited range of sentencing purposes that

4

is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### *Factors applying to James Dickerson*

I first address whether Dickerson has exhausted his administrative remedies as the statute requires. Although the Government has not been able to find a record with BOP of Dickerson having filed a request, I credit Dickerson's statement and evidence that on or about June 19, 2020, he filed a written request with the warden at FCI Fairton for the warden to file a motion for sentence reduction on his behalf. Because more than 30 days has elapsed since he filed the request, this is enough to satisfy the statute's exhaustion requirement. *See United States v. Vence-Small*, --- F. Supp. 3d ----, 2020 WL 1921590 (D. Conn. 2020).

Next I consider whether Dickerson has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. There is no doubt that the COVID-19 pandemic is extraordinary, having killed more than 170,000 people in the United States in recent months. Obesity is a significant risk factor for COVID-19,[3] and the Government has recently conceded in a case before me that a prisoner who has a body mass index (BMI) of 30 or more has established extraordinary and compelling reasons as required under the statute. *See United States v. Bashon Whitley*, 18cr004 (JAM) (Doc. #116). Accordingly, I conclude the statute's requirement for extraordinary and compelling reasons is established.

---

are proper for a court to consider when imposing a sentence for a violation of supervised release. *See* 18 U.S.C. 3583(h).

[3] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/2URD-P5B4] (last visited Aug. 20, 2020) (noting that having obesity increases the risk of severe illness from COVID-19).

The BOP reports that there are 3 inmates who have tested positive for COVID-19 at FCI Fairton, along with 100 inmates who have "recovered" from COVID-19.[4] In light of the great uncertainties with testing and detection of COVID-19, these numbers are enough to raise a genuine risk that Dickerson could become infected with COVID-19 if he serves out the rest of his sentence at FCI Fairton.

Next I consider sentencing factors and potential for danger. The Government rightly raises concerns about Dickerson's prior track record involving drug dealing and multiple brazen violations of the conditions of his supervised release. On the other hand, Dickerson points to his more recent accomplishments and signs of rehabilitation while serving his sentence of imprisonment—considerations that led me to impose a significantly reduced sentence than I had initially imposed when sentencing him for the violation of his conditions of supervised release.

On balance, I am persuaded that the purposes of sentencing and the protection of the public will be adequately served by granting Dickerson a modest reduction in his sentence to time-served rather than requiring him to serve out the rest of the year in prison where he would continue to be subject to highly restrictive conditions necessitated by the COVID-19 pandemic but inimical to the goal of rehabilitation. In order to reduce the risk that he will resume illegal activities, I will impose a term of home detention with electronic monitoring until the date (January 8, 2021) when he would otherwise have been released from imprisonment.

## CONCLUSION

For the foregoing reasons, the motions of defendant James Dickerson for a reduction in sentence (Docs. #2363 and #2367) are GRANTED. Dickerson's sentence is reduced to a term of time served as of Monday, August 24, 2020, on which date the Federal Bureau of Prisons shall

---

[4] *See* Federal Bureau of Prisons, COVID-19 Coronavirus (COVID-19 Cases), https://www.bop.gov/coronavirus/ [https://perma.cc/UL96-3G4T] (last visited Aug. 20, 2020).

RELEASE Dickerson from BOP custody to travel directly to the residence at 72 Brewster Street in New Haven, Connecticut and to commence his term of one year of supervised release. The Court amends his conditions of supervised release to provide that Dickerson shall be on home detention as a substitute for incarceration until January 8, 2021. He will be subject to electronic monitoring of a type to be determined by the U.S. Probation Office. He shall remain at his home (including the curtilage of the home) except that he may leave home only for purposes approved in advance by the U.S. Probation Office to include obtaining a COVID-19 test, obtaining necessary medical care, religious services, gainful employment, and education or treatment services. During the first 14 days of his release, Dickerson shall quarantine himself in his room within his home and without endangering any other household members. All other conditions of supervised release as previously imposed by the Court shall remain in full force and effect. The Court advises that it is highly likely to order Dickerson's re-imprisonment in the event of any more arrests or any material violation of the conditions of supervised release.

It is so ordered.

Dated at New Haven this 21st day of August 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge